**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3085-16T3
A-4501-16T3

AGUSTIN GARCIA,

     Plaintiff-Appellant,

v.

BERGEN COUNTY PROSECUTOR'S
OFFICE and NEW JERSEY OFFICE
OF THE ATTORNEY GENERAL,

     Defendants-Respondents.

_____

Argued telephonically January 30, 2019 –
Decided May 17, 2019

Before Judges Haas and Sumners.

On appeal from Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-6475-16.

Agustin Garcia, appellant pro se.

Craig P. Bossong argued the cause for respondent
Bergen County Prosecutors (Florio Perrucci Steinhardt
& Cappelli, LLC, attorneys; Craig P. Bossong, of
counsel and on the brief; Michael P. Marotta, on the
brief).

Aziz O. Nekoukar, Deputy Attorney General, argued the cause for respondent New Jersey Attorney General (Gurbir S. Grewal, Attorney General, attorney; Raymond R. Chance, III, Assistant Attorney General, of counsel; Aziz O. Nekoukar, on the brief).

PER CURIAM

These two appeals have been calendared back-to-back for the purpose of a single opinion. They both involve unsuccessful efforts by plaintiff Agustin Garcia to obtain records, a videotape, an interrogation report and an audiotape from defendants Bergen County Prosecutor's Office (BCPO), New Jersey Attorney General's Office (OAG), and Ridgefield Police Department (RPD) under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access, related to his conviction for murdering his ex-girlfriend on her wedding day in 1999.

After analyzing the facts and law, Assignment Judge Bonnie J. Mizdol entered orders of dismissal and rendered extensive written decisions. She determined that plaintiff was provided some of the sought-after records and copies of the videotape and audiotape in discovery from his prosecution for murder. She further determined that he had no legitimate interest in the videotape and audiotape following the denial of his three unsuccessful post-

conviction relief (PCR) petitions. We affirm substantially for the thoughtful reasons given by Judge Mizdol.

I

An extensive recitation of the events underlying plaintiff's OPRA and common law requests is not necessary, as they are more fully discussed in this court's four unpublished opinions, which are noted below, regarding appeals of his convictions, sentences and PCR petitions. We, however, provide a brief summary as a backdrop to our decision.

Following a lengthy jury trial, plaintiff was convicted of the murder of his ex-girlfriend, two weapons related offenses, and two counts of endangering the welfare of a child. The convictions arose out of an incident in which plaintiff appeared uninvited at his ex-girlfriend's wedding and shot and killed her at close range in the presence of witnesses, including children. The shooting was captured by the wedding videographer on high-resolution video tape, which was copied exactly by RPD Lieutenant David Cassirer to a VHS tape for viewing in court. Contrary to what the tape revealed, plaintiff testified that after he entered the bride's house where the wedding was being held, her brother and others attacked him, he reached for his gun to protect himself, and at some point during the struggle he blacked out and learned that the bride had been killed. Plaintiff

also claimed that upon learning of the bride's death, he stated he wanted to kill himself. After the final shot, plaintiff was restrained when he attempted to reload the gun.

Plaintiff was sentenced to life in prison, with thirty years of parole ineligibility, for murder; a consecutive four-year term for third-degree unlawful possession of a weapon; and two concurrent four-year terms for endangering the welfare of a child. We affirmed plaintiff's convictions and sentences for murder and the weapons offenses, but reversed the convictions on the two counts of endangering the welfare of a child. State v. Garcia, No. A-3939-01 (App. Div. May 11, 2004). Plaintiff's petition for certification was denied. State v. Garcia, 181 N.J. 545 (2004).

Plaintiff thereafter filed three unsuccessful petitions for post-conviction relief. State v. Garcia, No. A-5437-06 (App. Div. Nov. 6, 2009); State v. Garcia, No. A-3198-09 (App. Div. Aug. 12, 2011); State v. Garcia, No. A-2764-10 (App. Div. May 16, 2013).

II

We now address plaintiff's contentions and Judge Mizdol's orders in the two matters before us.

A-3085-16T3

A-3085-16

1. 2014 OPRA/Common Law Confession Request

In October 2014, plaintiff submitted an OPRA and common law request

to the RPD seeking the following records, information and video/audio

recordings:

> 1. Copy of log indicating names and titles of individuals who participated/observed my in-custody interrogation at/or around the facilities of Ridgefield Police (council chambers) on September 26, 1999, around the hours of 5:00-11:30 p.m.;
>
> 2. Copy of any and all written recorded report and/or statement prepared and/or submitted to [the] Ridgefield police precinct supervisor or to any other governmental agency by each and every individual participant in my in-custody interrogation, including but not limited to, Lieutenant Brian T. Callahan, Detective Robert Anzilotti, Thomas P. Falotico and Dennis Suarez, among others;
>
> 3. Copy of any and all interrogation video/audio tapes and resulting written transcripts and summary;
>
> 4. Copy of Ridgefield Police precinct daily audio/video interrogation log, directly or listing for September 26, 1999, and for the entire month of September 1999;
>
> 5. Copy of logs and/or record indicating [the] name of individuals who participated in the recording, editing, and/or transcribing of the video/audio tape of my in-

custody interrogation which occurred on September 26, 1999, during the hours of 5:00-11:30 p.m.;

6. Copy of daily log of video/audio tape conducted inside Ridgefield Police (council chambers) and/or any other of [sic] its facilities during the weeks preceding and following September 26, 1999;

7. Copy of any and all regulation enacted under N.J.S.A. 40A:14-118, or other statute or regulation that carries the force of law, [and policy or procedure] requir[ing] the creation or retention of in-custody interrogation video-audio tape covering [the] day in question 09-26-99. Alternatively, certification by Record Custodian or competent person, affirming under oath that Bergen County Prosecutor's Office was not obliged or required by any regulation, policy or procedure, to produce and/or maintain during [the] year 1999 in-custody interrogation audio-video tape and related government record.

[(Emphasis added)].

The RPD denied the request because they did not possess the records requested.

About two weeks later, plaintiff submitted the exact same request to the BCPO. Shortly thereafter, the BCPO denied plaintiff's request, asserting that it did not possess responsive records to request numbers one and three through six. With respect to request number two, the BCPO replied that it possessed an eighteen-page written report by Det. Anzilotti, which described a September 26, 1999 interview, but that it was exempt from disclosure, as it constituted a "criminal investigatory record" pursuant to N.J.S.A. 47:1A-1.1. Plaintiff's

attorney acknowledged receipt of this report as item fifty-five in the BCPO's discovery inventory from July 2000. With respect to the denial of request number seven, the BCPO explained that its records custodians are not required to conduct research under OPRA.

Two weeks later, plaintiff mailed his notice of motion for an Order to Show Cause (OTSC) with a verified complaint pertaining to the RPD and the BCPO's denial of his OPRA and common law request for the records and audiotape pertaining to his in-custody interrogation. Despite the court's receipt of his complaint, it was never "filed" due to procedural deficiencies.

2. 2016 OPRA/Common Law Wedding Videotape Request

On August 15, 2016, plaintiff submitted another OPRA and common law request to the BCPO, seeking the:

> "unedited-original wedding video tape" . . . plus any
> and all record[s] and related minutes in [BCPO's]
> possession pertaining to [the] seizure, storage, chain
> of custody manipulation, and/or management of this
> un-edited original wedding video tape seized . . . on
> September 16, 1999.

A week later, the BCPO denied plaintiff's request, citing the "criminal investigatory records" exemption of OPRA because a civilian made the tape, which was not required to be made or maintained, and was being held by a law enforcement agency in conjunction with a criminal investigation. N.J.S.A.

47:1A-1.1. BCPO further explained that the remainder of the request for records was denied because those records also constituted exempt criminal investigatory records. N.J.S.A. 47:1A-1:1. Finally, BCPO asserted that plaintiff, through discovery, already possessed a copy of the Seizure of Evidence report, which he identified as potentially responsive and even attached it to his request.

In response, plaintiff filed an OTSC and verified complaint against the OAG and the BCPO, alleging violations of OPRA and the common law right to access, and seeking assignment of counsel. About six weeks before oral argument, plaintiff filed a motion seeking to reactivate his previous "lawsuit" with respect to his 2014 OPRA requests.

### 3. Court Order/Decision

On November 30, 2016, Judge Mizdol issued two orders: one, denying plaintiff's request to reactivate his 2014 OPRA/Common Law Confession Request from the RPD and the BCPO; the other, denying his 2016 OPRA/Common Law Wedding Videotape Request to the BCPO and the OAG. The judge issued a single written statement of reasons detailing her factual findings and legal conclusions as to both orders.

With respect to the wedding videotape request, the judge reasoned that although the videotape was a government record under OPRA, it was exempt

from disclosure because it was already provided to plaintiff via criminal discovery. With respect to the other portion of the wedding videotape request – "any and all record[s] and related minutes in [BCPO's] possession pertaining to [the] seizure, storage, chain of custody, manipulation and/or management of this un-edited[ ]original wedding video[tape] seized" – the judge found that the request was overly broad under OPRA. N.J. Builders Ass'n v. N.J. Council on Affordable Hous., 390 N.J. Super. 166, 177 (App. Div. 2007).

In finding that the wedding videotape was not required to be released under the common law, the judge found that in addition to having been in possession of the videotape for nearly sixteen years, plaintiff had "no legitimate interest" under Mason v. City of Hoboken, 196 N.J. 51, 67-68 (2008), in the videotape. She reasoned that due to his three previously unsuccessful PCR petitions – raising, among other things, the same arguments with respect to the authenticity of the wedding videotape – plaintiff had no reasonable chance to overturn his convictions.

Judge Mizdol next addressed plaintiff's 2014 OPRA/Common Law Confession Request. She found that five (numbers one, three, four, five and six) of the seven categories of items requested did not exist; thus BCPO could not produce them. As for item number seven, the information sought required "legal

research or certifications of facts," which the BCPO was not required to do under N.J.S.A. 47:1A-1. See Burnett v. Cty. of Gloucester, 415 N.J. Super. 506, 515 (App. Div. 2010). And for the remaining request, item number two, the judge found that because the report by Det. Anzilotti detailing the interrogation of plaintiff was already provided to plaintiff with his criminal discovery, the BCPO was not required to give it to him again. Bart v. City of Paterson Hous. Auth., 403 N.J. Super. 609, 618 (App. Div. 2008). The judge also denied plaintiff's request for the report under the common law for the same reasons she applied in denying the wedding videotape request.

Plaintiff's subsequent motion for reconsideration was denied, and the BCPO's cross-motion to preclude plaintiff from making future OPRA and common law requests pertaining to his 2001 murder conviction absent the court's approval was granted. In her written opinion, Judge Mizdol, relying upon Rule 4:49-2, D'Atria v, D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990), and Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010), explained plaintiff failed to "demonstrate that the court acted in an arbitrary, capricious, or unreasonable manner or failed to consider the probative value of evidence presented. Further, there is no new or additional information provided by plaintiff that he could not have provided on his first application for relief."

In granting the BCPO's cross-motion, the judge, citing Rosenblum v. Borough of Closter, 333 N.J. Super. 385, 390-97 (App. Div. 2000), exercised her inherent authority to prevent the filing of frivolous litigation. She reasoned that it was necessary for plaintiff to obtain prior approval to file complaints because of his "history of repetitive and unsuccessful [PCR] applications" and "repeated motions . . . alleging errors of law enforcement, the judiciary, the BCPO, and his counsel without merit."

B.

A-4501-16

1. 2016 OPRA/Common Law Audiotape Request

On November 1, 2016, plaintiff submitted an OPRA and common law request to the BCPO, seeking a "copy of [the] un-edited original" micro-cassette audiotape, admitted as evidence in the 2001 murder trial. The audiotape, taken from the victim's answering machine, recorded a conversation between plaintiff and the victim. Plaintiff additionally requested "any and all record[s] and related minutes in [the BCPO's] possession[,] pertaining to the seizure, storage, chain of custody, manipulation and/or management" of the audiotape.

About a week later, the BCPO denied plaintiff's request. With respect to the audiotape, the agency replied that plaintiff was already provided a copy of

11

the recording and, accordingly, was not entitled to receive another copy. As for all records related to the audiotape's chain of custody, the BCPO responded:

> [T]he micro-cassette tape was provided to this office by Norma Rosario. Item 39, Receipt of Property Report, Item 90, Statement of Norma Rosario Taken on 12/9/99, Item 91, Interview Report of Norma Rosario, and Item 92, Statement of Norma Rosario taken on 2/10/00, listed in the attached discovery receipt are responsive to your request. You previously received all of these items and a requester is not entitled to obtain a record that he already received.

The BCPO also asserted that the audiotape and chain of custody documents were exempt as a "public record" from disclosure under OPRA's definition of a criminal investigatory record.

The BCPO also denied the entirety of plaintiff's request under common law because plaintiff did not "identif[y] [his] interest in obtaining the records[]" and thus, the custodian could not conduct the necessary balancing of interests to determine if plaintiff was entitled to the records sought.

Almost three weeks later, plaintiff forwarded an OPRA request to the OAG for a copy of the same audiotape it sought from the BCPO. The request was denied because the audiotape was not made, maintained, kept on file or received by the OAG.

12

Plaintiff then filed an order to show cause and verified complaint against the OAG and the BCPO, seeking a copy of the audiotape and transcript of the tape.

2. Court Order/Decision

On April 11, 2017, Judge Mizdol issued an order denying plaintiff's request for these records pursuant to OPRA and the common law right of access. She set forth her reasoning in an oral decision following oral argument, and issued a written decision that same day. As to the OAG, the judge denied the request finding "credible the OAG record custodian['s] certification that no such responsive records exist in their possession." Despite agreeing with plaintiff that the audiotape and transcript were government records under OPRA based upon N. Jersey Media Grp. v. Twp. of Lyndhurst, 223 N.J. 553 (2015), the judge denied his request because he had already received the requested records in his criminal trial discovery. She credited the BCPO investigator's certification that plaintiff's criminal trial counsel received the sought-after records.

As for plaintiff's allegation that he does not possess an original of the "unedited" audiotape, the judge was unmoved, stating he "had the opportunity to inspect the original version of the document and/or the [audiotape] during [the criminal] discovery some 16 years ago." She also noted, "[o]n three

separate occasions, the issues of evidence tampering and prosecutorial misconduct were presented to the [t]rial [c]ourt in [PCR] [a]pplications. On each occasion, the [t]rial [c]ourt gave no merit to those claims, and the Appellate Division affirmed each denial." In sum, Judge Mizdol determined that plaintiff's "exploitation" of OPRA in an attempt to "relitigate alleged evidentiary issues from his criminal trial" would not advance OPRA's purpose to "ensure an informed citizenry."

The same reasoning applied to denying plaintiff's common law request for the documents, according to Judge Mizdol. Plaintiff was not entitled to the records because he had "no legitimate interest" in the replication of them due to his three previous unsuccessful PCR appeals, which argued substantially the same points challenging authenticity of the audiotape, as well as the videotape.[1]

---

[1] After filing his notice of appeal, plaintiff filed a motion for reversal of Judge Mizdol's April 11, 2017 order, and "granting of" his request for the audiotape. He thereafter filed a motion to remand this appeal due to an incomplete transcript as a result of inaudible portions of the April 11 transcript. On October 16, this court denied plaintiff's motion, but partially remanded to the Law Division to correct the oral argument transcript, which was unable to document plaintiff's argument due to his telephonic appearance. After oral argument was renewed on November 3, Judge Mizdol ordered that plaintiff receive the corrected transcript at no cost to him and affirmed her April 11 order.

III

In A-4501-16, plaintiff raises the following arguments:

POINT I

LAW DIVISION'S APRIL 11, 2017 JUDGEMENT
AFFIRMING BCPO'S NOV. 9, 2017 DENIAL OF
PLAINTIFF'S NOV. 1 2017 GOVERNMENT
RECORD REQUEST, FOR "COPY OF UN-EDITED-
ORIGINAL GOVERNMENT RECORD DESCRIBED
IN COURT AS "'S-3' IS A PAPER EVIDENCE BAG
LABELED NUMBER 2, FOR OUR CASE, CH99-31,
THIS BAG CONTAINS A RADIO SHACK MICRO-
CASSETTE TAPE THAT IS LABELED GLADYS,
AND IT IS DATED 12/9/99.  THERE ARE A
COUPLE OF INITIALS ON IT ALSO, IS
FACTUALLY ERRONEOUS, ARBITRARY,
CAPRICIOUS, UNREASONABLE AND IS NOT
SUPPORTED BY SUBSTANTIAL CREDIBLE
EVIDENCE IN THE RECORD AS A WHOLE.
THEREBY, DEPRIVING PLAINTIFF OF HIS
RIGHT OF ACCESS UNDER OPEN
GOVERNMENT RECORDS ACT (OPRA), [N.J.S.A.]
47:1A-1-13, AND COMMON LAW RIGHT OF
ACCESS.

A.     DEFENDANT, BCPO'S ASSERTED GROUND
"EXEMPT FROM RELEASE AS A CRIMINAL
INVESTIGATORY RECORD" FOR ITS DENIAL OF
REQUESTED "COPY OF UNEDITED-ORIGINAL[
]GOVERNMENT RECORD DESCRIBED IN
COURT AS FOLLOWS: "'S-3', IS A PAPER
EVIDENCE BAG LABELED NUMBER 102.  FOR
OUR CASE, CH99-31.  THIS BAG CONTAINS A
RADIO SHACK MICRO-CASSETTE TAPE THAT
IS LABELED GLADYS, AND IT IS DATED 12/9/99.
THERE ARE A COUPLE OF INITIALS ON IT,"

15

ALSO WAS REJECTED BY JUDGE APRIL 11, 2017 FINDING.

B.    LAW DIVISION'S APRIL 11, 2017 FINDING: "PLAINTIFF IS PRECLUDED UNDER OPRA FROM COMPELLING DISCLOSURE OF DOCUMENTS PLAINTIFF ALREADY HAS IN HIS POSSESSION.  THUS, PLAINTIFF IS NOT ENTITLED TO DISCLOSURE" [AND] IS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD.

[(emphasis omitted).]

In A-4501-16, plaintiff raises the following arguments:

POINT I

JUDGE'S 11-30-17 AND 02-13-17 JUDGMENTS, I.E., FACTUAL FINDING[S] AFFIRMING BCPO'S AUG. 25, 2016 DENIAL OF PLAINTIFF'S AUG. 15, 2016 GOVERNMENT RECORD REQUEST, FOR "COPY OF UNEDITED- ORIGINAL WEDDING VIDEO TAPE" ARE ARBITRARY, CAPRICIOUS, UNREASONABLE AND IS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD AS A WHOLE.  THEREBY, DEPRIVING PLAINTIFF OF HIS RIGHT OF ACCESS UNDER OPEN GOVERNMENT RECORD ACT ("OPRA"), [N.J.S.A.] 47:1A-1-13, AND COMMON LAW RIGHT OF ACCESS.

A.    DEFENDANT, BERGEN COUNTY PROSECUTOR['S] OFFICE (HERE-IN-AFTER "BCPO") ONLY ASSERTED GROUND FOR DENIAL OF REQUESTED "COPY OF UNEDITED- ORIGINAL WEDDING VIDEO TAPE," I.E., "EXEMPT FROM RELEASE AS A CRIMINAL

16

INVESTIGATORY RECORD," WAS REJECTED BY JUDGE FINDING: "THE WEDDING VIDEO DOES NOT QUALIFY AS EXEMPT CRIMINAL INVESTIGATORY RECORD . . . , "WARRANTING GRANTING OF PLAINTIFF'S REQUEST WITHOUT FURTHER PROCEEDING, IN [THE] BEST INTEREST OF JUSTICE.

B.      DEFENDANT BCPO FAILED TO CARRY ITS BURDEN OF PROVING [THE] JUDGE'S FACTUALLY IRRATIONAL FINDING: "PLAINTIFF IS NOT ENTITLED TO PRODUCTION OF DOCUMENTS THAT HE ALREADY HAS IN HIS POSSESSION," BUT NOT RAISED ON BCPO'S AUG. 25, 2016 DENIAL AND DEFENDANT BCPO['S] TURNING [OVER] OF TAMPERED OR COMPOSITE COPY OF REQUESTED "UNEDITED-ORIGINAL WEDDING VIDEO TAPE" CONSTITUTED DENIAL OF ACCESS IN VIOLATION OF [N.J.S.A.] 47:1A ET. SEQ., AND COMMON LAW RIGHT OF ACCESS.

C.      JUDGE'S FINDING: ""ORIGINAL". . . "UNEDITED" . . . VERSIONS OF THE EVIDENCE DO NOT EXIST" IS CONTRADICTED BY HER OWN FINDING[S.]" "THE WEDDING VIDEO IS MAINTAINED AND KEPT ON FILE BY THE BERGEN COUNTY PROSECUTOR'S OFFICE [EMPHASIS ADDED]."  THIS ISSUE WAS NEVER RAISED ON BCPO'S AUG. 25 2016 DENIAL, WHICH, AS A MATTER OF FACT, CONTRADICTED THIS COURT'S IRRATIONAL FINDING AFFIRMING: "THE REQUESTED "[]COPY OF UNEDITED-ORIGINAL WEDDING TAPE IS IN STORAGE . . . FOR THE PURPOSE OF THIS RESPONSE, I SHALL ASSUME THE THAT THE VIDEOTAPE IS STILL IN THE FILE AND UNDAMAGED."

D.    DURING NOV. 30, 2016 ORAL ARGUMENT, ALTHOUGH [THE] COURT'S OCT. 27, 2016 SCHEDULING ORDER INDICATED "ORAL ARGUMENT ON NOVEMBER 20, 2016, THERE WAS NO ORAL ARGUMENT CONCERNING THE REQUESTED IN-CUSTODY INTERROGATION AUDIO-VIDEO TAPE, INSTEAD, JUDGE MIZDOL IRRATIONALLY, CAPRICIOUSLY, AND UNREASONABLY DISMISSED THIS MATTER WITHOUT EVEN CONSIDERING OVERWHELMING EVIDENCE IN THE RECORD, EVEN DISMISSING RIDGEFIELD POLICE DEPARTMENT WHO NEVER FILED PAPERS IN OPPOSITION ADHERING TO [THE] COURT'S OCT. 27, 2016 SCHEDULING ORDER.

POINT II

COURT'S 11-30-16 AND 02-13-17 DISMISSAL OF RIDGEFIELD POLICE DEPARTMENT WAS BASED ON AN OBJECTIVELY INCORRECT, IRRATIONAL AND UNREASONABLE BASIS, WHEREBY, THIS DEFENDANT NEVER RESPONDED [TO THE] ORDER TO SHOW CAUSE, THEREBY, DEPRIVING THE COURT OF MEANINGFUL RECORD NECESSARY FOR OBJECTIVE REVIEW OF CASE MERIT.

[(emphasis omitted).]

Having considered plaintiff's contentions, we conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E). We therefore affirm substantially for the reasons stated by Judge Mizdol in

18

connection with her written and oral opinions in both appeals. We add the following brief comments.

"OPRA provides for ready access to government records by the citizens of this State." Burnett v. Cty. of Bergen, 198 N.J. 408, 421-22 (2009) (citing Mason, 196 N.J. at 64-65). "The purpose of OPRA 'is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535 (2005) (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004)). Accordingly, OPRA directs that "all government records shall be subject to public access unless exempt," and "any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. Yet, a governmental entity is not required to reproduce records already in the requestor's possession. Bart, 403 N.J. Super. at 618 ("It is undisputed that [plaintiff] . . . had within his possession a copy of the [document] at issue; indeed, he attached a copy to the complaint he filed with the Council. He could not have been denied access to the document, . . . if he already had the document he sought.")

We review a trial judge's legal conclusions concerning access to public records under OPRA de novo. Drinker Biddle & Reath, LLP v. N.J. Dep't of Law and Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011). We will not disturb factual findings as long as they are supported by adequate, substantial and credible evidence. See Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988).

Under common law, to constitute a public record, three elements must be met: (1) the document be a written memorial; (2) the document be made by a public officer; and (3) the officer be authorized by law to make it. Bergen Cty. Imp. Auth. v. N. Jersey. Media Group, Inc., 370 N.J. Super. 504, 518 (App. Div. 2004). To gain access to materials under the common law right of access: "(1) 'the person seeking access must establish an interest in the subject matter of the material'; and (2) 'the citizen's right to access must be balanced against the State's interest in preventing disclosure.'" Mason, 196 N.J. at 67 (quoting Keddie v. Rutgers, 148 N.J. 36, 50 (1997)).

Guided by these principles, we see no reason to disturb Judge Mizdol's orders. Based upon her credible factual findings, the judge correctly dismissed plaintiff's complaints as there was no basis under OPRA and common law entitling him to the requested documents, especially the videotape and audiotape

that were already provided during the prosecution of the criminal charges against him.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3085-16T3